Shelly S. TURNER,
Administratrix of the Estate of Ricky Turner, Deceased *v.*
NORTHWEST ARKANSAS NEUROSURGERY CLINIC, P.A.

CA 04-1230                                     210 S.W.3d 126

Court of Appeals of Arkansas
Opinion delivered June 15, 2005

*Milligan Law Offices*, by: *Phillip J. Milligan* and *Robinson Wooten*, by: *Jon Robinson*, for appellant.

*Bassett Law Firm*, by: *Walker Dale Garrett* and *Shannon L. Fant*, for appellee.

SAM BIRD, Judge. This is the second appeal to come before us in this action brought by appellant, Shelly Turner, administratrix of the estate of Ricky Turner, for negligent hiring, supervision, and retention against appellee Northwest Arkansas Neurosurgery Clinic, P.A. In *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417 (2003), we reversed the Washington County Circuit Court's entry of summary judgment to appellee and remanded the case for trial. We also reversed that court's orders concerning discovery and the admissibility of evidence. Upon remand, the circuit court did not conduct a trial as we directed

it to do but again granted summary judgment to the Clinic, which Mrs. Turner argues was error. We agree.

Mrs. Turner's husband, Ricky Turner, died after complications following an operation performed by the Clinic's employees, Dr. Kelly Danks and Dr. Luke Knox. Dr. Knox is also the Clinic's president. Mrs. Turner sued the doctors for negligence, alleging that, at the time of her husband's surgery, Dr. Danks was suffering from undiagnosed bipolar disorder, was being improperly treated by Dr. Knox with the contraindicated antidepressant Prozac, and was inhaling nitrous oxide gas because the Prozac exacerbated his mental disorder. On those claims, she sought to hold the Clinic vicariously liable for the actions of Dr. Danks and Dr. Knox. She also alleged that the Clinic and Dr. Knox had been negligent in the hiring, supervision, and retention of Dr. Danks. The circuit court granted the Clinic's motion in limine prohibiting the admission of any evidence relating to Dr. Danks's mental illness, use of Prozac, abuse of nitrous oxide gas, and suspension from the practice of medicine. The court also denied Mrs. Turner's request to take the depositions of Dr. Danks's physicians. Mrs. Turner later settled all of her claims against Dr. Danks and Dr. Knox. On September 30, 2002, the circuit court granted summary judgment to the Clinic on all of Mrs. Turner's claims against it.

In her first appeal, Mrs. Turner argued that the circuit court had erred in its rulings concerning discovery and the motion in limine and in granting summary judgment to the Clinic. In an opinion dated December 3, 2003, we agreed, holding that the evidence that Mrs. Turner sought to introduce was admissible and that she should have been permitted to depose Dr. Danks's physicians. We also held that, in deciding whether to grant summary judgment, the circuit court had impermissibly weighed the evidence and determined that Mrs. Turner's experts were not credible. We reversed the summary judgment for the Clinic, stating:

> The evidence discussed above, which should have been ruled admissible, clearly establishes the existence of genuine issues of material fact as to whether Dr. Danks breached his standard of care when operating on Mr. Turner and whether the Clinic knew or should have known that Dr. Danks would pose an unreasonable risk of harm to patients. Accordingly, we reverse the award of summary judgment to the Clinic and remand this case for trial.

84 Ark. App. at 105, 133 S.W.3d at 424. Our mandate issued on

February 17, 2004, stated that the case was "reversed and remanded for the reasons set out in the attached opinion."

On April 20, 2004, the Clinic moved for summary judgment on the negligent supervision, hiring, and retention claim against it on the ground that Mrs. Turner's settlement of her claims against Dr. Knox inured to its benefit, because a corporation acts only through its officers, authorized agents, or employees, and the release of an agent also relieves the principal of responsibility. Mrs. Turner argued in response that this principle did not apply when a direct action was brought against the employer for its own acts; that appellee could have made that argument on the first appeal; and that our December 3, 2003 opinion was the law of the case. In its reply, the Clinic contended that this issue was not ripe for determination on the first appeal. On July 20, 2004, Mrs. Turner moved for a jury trial in accordance with our mandate.

On August 6, 2004, the circuit court denied Mrs. Turner's motion for a jury trial and granted the Clinic's motion for summary judgment. In its letter opinion, the court stated:

> The first question to be answered by this Court is whether this Court can proceed on the Motion for Summary Judgment or whether the law of the case doctrine or the Mandate prevents this Court from the Motion for Summary Judgment which raises a different and new issue.
>
> In the case at bar, the Court of Appeals did not address the current issue nor could it have in that the issue did not become ripe for argument until after this Court had already ruled that summary judgment should be granted to the Clinic for other reasons. After the oral ruling from the bench on September 23rd, 2002, (which was reduced to a written order and filed on September 30th, 2002) the plaintiff settled the negligent supervision claims against Dr. Luke Knox individually. The law of the case doctrine provides that the decision of an appellate court established the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review and is conclusive of every issue of law or fact *previously decided* by the appellate court. See *Ward v. Williams*, 80 Ark. App. 69 (2002); *Lender v. Lender*, 248 Ark. 322 (2002). There-fore, since the Clinic had no opportunity to raise the settlement issue, because there had been no settlement at the time of the Court's ruling, the law of the case doctrine is simply inapplicable to these facts.

The plaintiff also argues that the Mandate prevents this Court from considering this new summary judgment issue. After reading the cases cited by both parties, I find that the Mandate does not divest this trial court of jurisdiction to hear and determine the Motion for Summary Judgment under consideration at this time and it does not preclude a defendant from asserting a defense that was not available at the time of the first appeal and which defense is not inconsistent with the appellate court's ruling in that case. Clearly, there has been no decision by the appellate court on whether or not the settlement with Dr. Knox on the negligent supervision claim extinguishes the claim against the Clinic.

## MOTION FOR SUMMARY JUDGMENT

The Court now turns to the pending Motion for Summary Judgment which was orally argued on June 24th, 2004, in this Court. This issue before the Court at that hearing on the Motion for Summary Judgment is as follows: Given that a professional corporation, such as the Clinic, can only act through its officers, authorized agents, and employees[,] does the release of the only officer, agent or employee whom the plaintiff claims to have committed the tortious conduct amounting to negligent supervision inure to the benefit of the Clinic so as to eliminate the Clinic's liability as a matter of law?

At the hearing I indicated that I thought that the defendant had the better argument and that the settlement does eliminate the liability of the Clinic for negligent supervision. The only person plaintiff alleged committed the negligent supervision was the president of the Clinic, Dr. Luke Knox, with whom the plaintiff settled for his individual liability for negligent supervision. The plaintiff has not alleged in the Second Amended Complaint that any other agent, employee, or officer of the defendant committed any negligent hiring, retention or supervision. The complaint only alleges conduct by the president, Dr. Luke Knox. After the hearing on June 24th, 2004, I requested that supplemental briefs be prepared and filed concerning how any other state has handled this issue. I have reviewed the briefs filed by both parties as well as all subsequent motions and replies.

A corporation, of course, has no capacity to commit . . . a tortious act or omission in its own right, but can only act through its officers, agents or employees. In *Rhoads v. Progressive Casualty Ins. Co.*, 36 Ark. App. 185 (1991) the Arkansas Court of Appeals ruled

that when a plaintiff settled with the insurance agent for his negligence the principle [sic] or insurance company is released from any liability. Of course, the insurance company could only act through its agents just as this Clinic could only act through its agents, officers or employees. We have the same situation in the case at hand. The plaintiff settled with Dr. Knox for his negligent supervision and which was the basis of the claim against the Clinic. Therefore, based on the *Rhoads* decision the Clinic is no longer potentially liable because the plaintiff has released Dr. Knox for all his alleged negligent acts or omissions for negligent supervision, hiring and retention. Since the claims against Dr. Knox have been eliminated by settlement and there are no other agents, officers or employees of the Clinic who have been alleged to have acted in any negligent fashion, consistent with the holding of *Rhoads*, the plaintiff's settlement with Dr. Knox has eliminated the Clinic's independent liability.

On August 13, 2004, Mrs. Turner filed a notice of appeal. On August 16, 2004, she filed a motion for recusal and to set aside the summary judgment. The court denied this motion on September 8, 2004. Mrs. Turner filed a notice of appeal from that order on September 29, 2004.

On appeal, Mrs. Turner argues: (1) the circuit court lacked jurisdiction to act inconsistently with this court's mandate, and the award of summary judgment to the Clinic was such an inconsistent act; (2) whether the settlement with Dr. Knox inured to the Clinic's benefit could have been argued in the previous appeal and is now barred by the law-of-the-case doctrine; (3) the release of Dr. Knox did not effect a release of the Clinic on her negligent-hiring, supervision, and retention claim; (4) the circuit judge abused his discretion in refusing to recuse. Because we agree with appellant that our December 3, 2003 opinion is the law of the case and that the trial court failed to follow our mandate, we need not decide whether the release of Dr. Knox inured to the Clinic's benefit on the negligent-hiring, supervision, and retention claim against it. We affirm on the recusal issue but reverse the grant of summary judgment in favor of the Clinic.

### The Mandate Rule and the Law-of-the-Case Doctrine

Appellant's first two points on appeal are so interrelated that we will address them together. Mrs. Turner argues that the circuit court exceeded its jurisdiction in acting outside the scope of the

mandate by awarding summary judgment to the Clinic on remand, pointing out that we directed the circuit court to permit her to conduct discovery of Dr. Danks's treating physicians and to proceed with a trial. She also contends that the legal effect of the settlement with Dr. Knox could have been argued by the Clinic on the first appeal and that it is now the law of the case. The Clinic responds that, on remand, the circuit court had jurisdiction to determine motions that were not inconsistent with the mandate or available to the moving party prior to the first appeal. It argues that Mrs. Turner's settlement with Dr. Knox was not effective until *after* the first summary judgment and, therefore, this defense was not available until after the case was remanded; that neither the circuit court nor this court decided the legal effect of that settlement; and that our mandate contained no specific instructions to the trial court. In reply, Mrs. Turner states that there has been no change in the relevant facts since before the mandate was issued. She also points out that, in its brief on the first appeal, the Clinic called attention to the fact that all claims against Dr. Knox had been settled but did not assert that the settlement inured to its benefit. Mrs. Turner further correctly notes that the law-of-the-case doctrine applies to every issue that *could have been*, but was not, decided on the first appeal.

In order to decide the issues presented in this appeal, the chronology of events occurring between September 23, 2002, and our December 3, 2003 opinion must be discussed. A hearing on the Clinic's motion for summary judgment based on the settlement of the claims against Dr. Danks was held on September 23, 2002. At that hearing, the trial judge said that he would grant the motion as to the claims for which the Clinic could be held vicariously liable for Dr. Danks's acts. He also said that he would grant summary judgment to the Clinic on the direct claim against it for negligent hiring, supervision, and retention because Mrs. Turner had failed to demonstrate any proof in support of that claim. On September 26, 2002, the Clinic moved for summary judgment on the claims for which it could be held vicariously liable for Dr. Knox's negligence. In its motion, the Clinic stated: "[T]he plaintiff recently settled with and will release Dr. Luke Knox and enter an Order of Dismissal as against Dr. Luke Knox." In her response, Mrs. Turner admitted that she had recently settled all of her claims against Dr. Knox. It is, therefore, apparent that the Clinic and the trial judge had knowledge of the settlement with Dr. Knox by September 26, 2002.

On September 30, 2002, the circuit court entered summary judgment for the Clinic and Dr. Knox on Mrs. Turner's claims against them for vicarious liability for the negligence of Dr. Danks, because she had settled with Dr. Danks and the claims against him had been dismissed. The court also entered summary judgment to the Clinic and Dr. Knox on Mrs. Turner's negligent-supervision claims because she had "no admissible evidence to support these claims beyond pure speculation and conjecture. . . ." On the same day, and with Mrs. Turner's consent, the court entered a separate order granting summary judgment to the Clinic on Mrs. Turner's claim against it for vicarious liability for Dr. Knox's negligence, as a result of her settlement with Dr. Knox. Because of Mrs. Turner's settlements with the doctors, the only remaining claim in dispute was her direct claim against the Clinic for negligent hiring, supervision, and retention.

The notice of appeal was filed on October 25, 2002. Mrs. Turner's claims against Dr. Knox were dismissed with prejudice on October 29, 2002. The record was filed with the supreme court clerk on June 4, 2003. In its August 5, 2003 brief in the first appeal, the Clinic noted that Mrs. Turner had settled her claims against Dr. Knox. We held oral argument on November 12, 2003. The Clinic did not argue in its brief or at oral argument that the settlement and release of Mrs. Turner's claims against Dr. Knox inured to its benefit on the negligent-supervision claim against it. In our December 3, 2003 opinion, we noted that the claims against Dr. Knox had been settled.

A mandate is the official notice of the appellate court's action, directed to the court below, advising that court of the action taken by the appellate court and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Dolphin v. Wilson,* 335 Ark. 113, 983 S.W.2d 113 (1998). A trial court must give deference to an appellate court's mandate, implementing both the letter and spirit of the mandate, given the appellate court's opinion and the circumstances it embraces. *Id.* In *Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304 (1948), the United States Supreme Court noted that, since its earliest days, that Court had consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court.

As explained below, the "mandate rule" is a subset of the law–of–the–case doctrine and is followed by the appellate courts of Arkansas. The question of whether the lower court followed the

mandate is not simply one of whether the lower court was correct in its construction of the case but also involves a question of the lower court's jurisdiction. *See Dolphin v. Wilson, supra.* The lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. *Id.* If an appellate court remands with specific instructions, those instructions must be followed exactly, to ensure that the lower court's decision is in accord with that of the appellate court. *Id.* Any proceedings on remand that are contrary to the directions contained in the mandate from the appellate court may be considered null and void. *Id.* "[E]ither new proof or new defenses cannot be raised after remand when they are inconsistent with this court's first opinion and mandate. Indeed, to allow such to occur undermines the finality of this court's decision and denies closure on matters litigated." *Id.* at 120, 983 S.W.2d at 117. *Accord City of Dover v. A.G. Barton,* 342 Ark. 521, 29 S.W.3d 698 (2000); *Little Red River Levee Dist. No. 2 v. Moore,* 199 Ark. 946, 137 S.W.2d 234 (1940); *White v. Gregg Agric. Enters.,* 72 Ark. App. 309, 37 S.W.3d 649 (2001).

The mandate rule has been described as "simply a sub-species of the venerable 'law of the case' doctrine, a staple of our common law as old as the Republic" that has remained essentially unchanged for approximately 150 years. *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.,* 896 F. Supp. 912, 914 (E.D. Ark. 1995). The inferior court cannot vary the appellate court's mandate; examine it for any other purpose than execution; give any other relief; review for error any matter decided on appeal; or meddle with it, other than to settle what has been remanded. *Id.* However, the courts have recognized some exceptions that might allow a matter to be revisited. They are: (1) the availability of new evidence; (2) an intervening change of controlling law; (3) the need to correct a clear error or prevent manifest injustice. *Id.*

The law-of-the-case doctrine provides that the decision of an appellate court establishes the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review and is conclusive of every question of law and fact previously decided in the former appeal, and also of those that could have been raised and decided in the first appeal, but were not presented. *See Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002); *Clemmons v. Office of Child Support Enforcement,* 345 Ark. 330, 47 S.W.3d 227 (2001); *Helena/W. Helena Schs. v. Hislip,* 78 Ark. App. 109, 79 S.W.3d 404 (2002); *see also Miller County v.*

*Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998). The rule is grounded on a policy of avoiding piecemeal litigation. *First Am. Nat'l Bank v. Booth*, 270 Ark. 702, 606 S.W.2d 70 (1980). Thus, the law-of-the-case doctrine prevents consideration of an argument that could have been made at trial and also prevents consideration of an argument that could have been raised in the first appeal and is not made until a subsequent appeal. *McDonald's Corp. v. Hawkins*, 319 Ark. 1, 888 S.W.2d 649 (1994); *Willis v. Estate of Adams*, 304 Ark. 35, 799 S.W.2d 800 (1990). However, when the evidence materially varies, the law-of-the-case doctrine has no application. *See Barnhart v. City of Fayetteville*, 335 Ark. 57, 977 S.W.2d 225 (1998); *Hartwick v. Hill*, 77 Ark. App. 185, 73 S.W.3d 15 (2002). The law-of-the-case doctrine is conclusive only where the facts on the second appeal are substantially the same as those involved in the prior appeal and does not apply if there was a material change in the facts. *Weiss v. McFadden*, 360 Ark. 76, 199 S.W.3d 649 (2004); *Wilson v. Wilson*, 301 Ark. 80, 781 S.W.2d 487 (1989).

By September 26, 2002, the Clinic knew of Mrs. Turner's settlement with Dr. Knox, and there was no change of material facts for over a year before we issued our opinion and mandate. We therefore hold that this issue is now the law of the case and that the circuit court failed to follow our mandate. Accordingly, we reverse and remand this case for trial as set forth in our December 3, 2003 opinion.

### Recusal

Mrs. Turner also argues that the circuit judge abused his discretion in refusing to recuse. She asserts that his consistent rulings against her on the discovery and evidentiary issues, his award of summary judgment to the Clinic before the first appeal, and his failure to follow our mandate evidence his prejudice and bias against her.

When recusal is in issue, a judge has a duty to sit on a case unless there is a valid reason to disqualify. *Perroni v. State*, 358 Ark. 17, 186 S.W.3d 206 (2004). It is a rule of long standing that there is a presumption of impartiality on the part of judges. *Kimbrough v. Kimbrough*, 83 Ark. App. 179, 119 S.W.3d 66 (2003). A judge's decision whether to recuse is within his discretion and will not be reversed absent abuse of that discretion. *Id.* The party seeking recusal must demonstrate bias. *Id.* Further, unless there is an objective showing of bias, there must be a communication of

bias in order to require recusal for implied bias. *Id.* The fact that a judge has ruled against a party is not sufficient to demonstrate bias. *Searcy v. Davenport*, 352 Ark. 307, 100 S.W.3d 711 (2003). On the record currently before us, we cannot say that the circuit judge abused his discretion in refusing to recuse.

For these reasons, we affirm the circuit judge's refusal to recuse, reverse the entry of summary judgment to the Clinic, and remand for trial, in keeping with our December 3, 2003 decision.

Affirmed in part; reversed and remanded in part.

GRIFFEN and VAUGHT, JJ., agree.